GEORGE R. DAVIS *vs.* CHARLES D. KING.

First Judicial District, Hartford, May Term, 1895. ANDREWS, C. J.,
    TORRANCE, BALDWIN, HAMERSLEY AND HALL, Js.

An agent may, with the authority and consent of his principal, employ a
    sub-agent; and in such case, if he in good faith selects a suitable and
    proper sub-agent, he is not responsible to his principal for the acts and
    omissions of the person so selected.
The principal's authority and consent to such employment may be given
    expressly or by implication.
The plaintiff purchased of the defendant, an investment broker, a note for
    $1,000 payable to the order of a trust company, and by it indorsed to
    the defendant, who, in turn, indorsed it to the plaintiff. The note was
    one of three, of the same amount, secured by a single mortgage on
    real estate of the maker in Georgia. The plaintiff did not know, until
    the maturity of an extension agreement, that the other notes were
    secured by the mortgage deed. The defendant was in the habit of col-
    lecting the interest coupons for the plaintiff, through the trust com-
    pany, without charge. The note not being paid at the termination of
    the extension agreement, the plaintiff, at the solicitation of the defend-
    ant, delivered the note to the defendant to collect, and the defendant
    forwarded the note to the trust company with instructions to collect
    and remit to him. Prior to this the trust company with the consent

Davis v. King.

of the holders of the other two notes, but without the knowledge of
the plaintiff or defendant, had agreed to extend the loan, and when
the plaintiff's note was delivered to the trust company the latter wrong-
fully returned it to the maker who destroyed it and sent back a renewal
note, which was tendered to the plaintiff who refused to accept it.
The plaintiff thereupon claimed that the delivery of the note to the
trust company by the defendant for collection, was unauthorized by
the plaintiff and was a conversion of the note by the defendant, and
he brought suit for its value. · *Held* that the plaintiff had impliedly
authorized the defendant to employ the trust company to collect the
note and must, therefore, look to the trust company and not to the
defendant.

[Argued May 7th—decided July 19th, 1895.]

ACTION to recover damages for the conversion of a note
placed in the hands of the defendant for collection; brought
to the Superior Court in Windham County and tried to the
court, *Ralph Wheeler, J.;* facts found and judgment rendered
for the plaintiff to recover the value of the note with interest,
and appeal by the defendant for alleged error in the rulings
of the court. *Error and judgment reversed.*

The case is sufficiently stated in the opinion.

*John C. Chamberlain,* for the appellant (defendant).

I. Since the defendant is the bailee for the accommodation
of the plaintiff, he is liable to the plaintiff in case of loss, only
for gross negligence. *Kinchelo* v. *Priest,* 89 Mo., 240; *Crop*
v. *Kissler,* 14 Colorado, 574; *Eddy* v. *Livingston,* 35 Mo.,
492; *Spooner* v. *Mattoon,* 40 Vt., 300; *Beardslee* v. *Richard-
son,* 11 Wend., 27. The facts here not only do not show
negligence, but on the contrary the highest commercial dili-
gence.

II. The Georgia Loan & Trust Company were the trus-
tees and agents of the plaintiff, and the proper persons to
whom this bond should be sent for collection, and if the plain-
tiff had lost anything through the misconduct of said com-
pany, the defendant was not liable therefor. *Hayward* v.
*Munger,* 14 Iowa, 522; *Indig* v. *National City Bank,* 80 N. Y.,
106; *Bank of Washington* v. *Triplet et al.,* 1 Pet., 28.

If the Georgia Loan & Trust Company was not the trustee
of the defendant, but ordinary brokers through whom it was

usual to make collections, the transmission to them of this bond by the defendant with instructions to collect the same, would be a sufficient performance of his duty, even though he was to receive pay from the plaintiff for what he did; and if any loss arose from the misconduct of the Trust Company, the defendant would not be liable therefor. *Dorchester & Melton Bank* v. *New England Bank*, 1 Cush., 186; *Fabens* v. *Mercantile Bank*, 23 Pick., 330; *East Haddam Bank* v. *Scofield*, 12 Conn., 303; *Bank of Washington* v. *Triplet et al.*, 1 Pet., 28; *Stacy* v. *Dane County Bank*, 12 Wis., 707; *Ætna Ins. Co.* v. *Alton City Bank*, 25 Ill., 243.

III. The plaintiff suffered no damage, if the delivery of the note to the maker was unauthorized. He can still sue upon the note as if it had been lost or destroyed. *East Haddam Bank* v. *Scovill*, 12 Conn., 313; *Indig* v. *National City Bank*, 80 N. Y., 107; *Allen* v. *Suydam*, 20 Wend., 327; *Powers* v. *Fitzhugh*, 10 Hump., 243; *Hagerstown Bank* v. *Adams Ex. Co.*, 45 Pa. St., 428; *Reynolds & Wines* v. *French*, 8 Vt., 29.

At all events damages for the detention of his money is all that he should recover. It is not lost; it is secured exactly as before. He may recover from the Loan and Trust Co. damages for the unlawful extension of this loan; but he cannot recover for a conversion which has never taken place, on a loss which he has not suffered. *Borup* v. *Ninniger*, 5 Minn., 418; *First Nat. Bank* v. *Fourth Nat. Bank*, 77 N. Y., 328; *Mitchell* v. *Shualt*, 16 Mich., 445.

*Charles E. Searls*, for the appellee (plaintiff).

I. The defendant claims that he was a bailee for the accommodation of the plaintiff. The facts do not so appear. The note was delivered to him at his solicitation for collection, and it is evident that the parties regarded its collection as a part of the duty the defendant assumed towards the plaintiff when the loan was negotiated, the consideration being the acceptance by the plaintiff of the note.

If the service was intended as a gratuitous one, it in no

way changes the obligation assumed by the defendant.   Me-
chem on Agency, § 478; Story on Agency, § 183.

II. The defendant was an independent contractor, and
Burr & Knapp and The Georgia Loan and Trust Company
were his agents.   If so, then the defendant is liable for their
default, no matter how careful and diligent he may have
been in selecting such agents.

If a custom existed which released the defendant for any
responsibility for the neglect or misconduct of his correspond-
ents, and was known by the plaintiff to exist, and was by
implication assented to by him, the defendant is none the
less liable, if he did not act in good faith and with reasonable
care and prudence under the circumstances in transmitting
said note to Burr & Knapp.

The defendant was an original contractor.   Mechem on
Agency, § 513; *Walker* v. *Stevens*, 79 Ill., 193; *Abbott* v.
*Smith*, 4 Ind., 452; *Lewis* v. *Peck*, 10 Ala., 142; *Riddle* v.
*Poorman*, 3 Penn., 224; *Pollard* v. *Rowland*, 3 Blackf. (Ind.,)
22; Mechem on Agency, § 515; *Howe* v. *Wise*, 91 U. S.,
308; *Weyerhausen* v. *Dunn*, 100 N. Y., 150; *Bradstreet* v.
*Emerson*, 72 Pa. St., 124; *Sanger* v. *Dun*, 47 Wis., 615;
*Palmer* v. *Holland*, 51 N. Y., 416; *Am. Express Co.* v. *Haire*,
21 Ind., 4.

Was there any custom changing the rules of law as appli-
cable to this defendant?   The finding does not disclose any
such custom.   If any such there was, it must have been
known to the plaintiff in order to render him subject thereto.
Such knowledge may be actual or presumptive.   It was not
actual knowledge.·   To have been presumptive it must be
manifest from the finding that the custom was so general and
well established that the parties must be presumed to have
had knowledge of it, and to have contracted with reference
to it.   *Park* v. *Vierno*, 10 Mo. App., 383; *Eager* v. *Atlas Ins.
Co.*, 14 Pick., 141; *Sturges* v. *Buckley*, 32 Conn., 18, 265.

III. Whether the plaintiff may have any remedy as sug-
gested by the defendant, either against Colley, the maker of
the note, or against The Georgia Loan & Trust Company, it
would be unprofitable at this time and in this presence to

discuss. If any such remedy exists, it in no way bars the plaintiff of his other remedy for the conversion of this note. 4 Amer. & Eng. Ency. of Law, 124; *Seymour* v. *Ives*, 46 Conn., 109.

TORRANCE, J.   This is an action to recover damages for the conversion of a note.   The court below made a finding of facts, and upon those facts rendered judgment for the plaintiff, and from that judgment the defendant brings the present appeal.

The following is a somewhat condensed statement of the facts found:—On and before June 1st, 1890, the defendant was in business in Danielsonville in this State, under the name of C. D. King & Co., and advertised himself under that name as an investment broker and negotiator of Southern loans.   He continued said business there under that name down to the time of the trial.   About June 1st, 1890, the plaintiff, at the solicitation of the defendant, purchased of him the note in question.   It was dated June 1st, 1888, for the sum of $1,000, signed by one Colley, payable to the order of the Georgia Loan and Trust Company, and due five years from date with interest at eight per cent payable semi-annually.   It was indorsed by the Georgia Loan and Trust Company to the defendant, and by him to the plaintiff.   No mortgage deed or other papers accompanied the note, and the plaintiff never saw any papers other than it, although he understood that the note was secured by mortgage to the Loan and Trust Company, on certain real estate situated in Georgia.   The note sold to the plaintiff was one of three notes of like amount, tenor, and date, made by Colley in June, 1888, to said Loan and Trust Company, for a loan of $3,000 then made by it to him, and all three notes were secured by one and the same mortgage deed of trust, made by Colley to said company, upon land of his in Georgia.   The company desired to have the notes made in three amounts for convenience in selling, and for the purpose of negotiating them.   The court finds that the plaintiff did not know, until after the maturity of the extension coupon hereinafter referred to, that any

other notes than his own were secured by said trust deed, but there was a statement of that fact upon his note. When the note came due, the plaintiff, at the request of the defendant, consented to an extension for three months, and subsequently received through the defendant an extension coupon to cover the interest of said three months, and dated June 1st, 1893, which coupon was afterwards paid. Prior to this time, the defendant had collected for the plaintiff the interest coupons upon this note as they came due. The defendant did this through the firm of Burr and Knapp of Bridgeport in this State, who were investment brokers, and one of whom was the president of the Georgia Loan and Trust Company; and the Connecticut office of that company was in the office of Burr and Knapp, who were its general managers in this State. Where the Georgia Company was located, or any other facts concerning it, the evidence did not disclose. The defendant among other loans, handled those of this Georgia Company, through Burr and Knapp, but under what arrangement did not appear. The coupons upon plaintiff's note as they came due were sent by defendant to Burr and Knapp, and the money when received by them was sent to the defendant and paid by him to the plaintiff. When the extension coupon came due, the note remained unpaid, and the plaintiff on September 20th, 1893, " at the solicitation of the defendant and relying upon his assurance that, if he would give the defendant the note for collection, the defendant would get the amount due upon it in a very short time, delivered said note to the defendant with positive instructions to collect the amount due thereon, and received from him a receipt therefor, reading as follows : ' Received of George R. Davis, note 2441, Georgia Loan, 1994 for $1000 for collection. Matured Sept. 1st, 1893. Placed in our hands at first on Sept. 20th, 1893. C. D. King & Co.'" Nothing was said between the parties as to any compensation to be paid the defendant for the collection of said note, and he never expected anything would be paid, unless some difficulty arose in making the collection ; but the plaintiff understood that the defendant would attend to its collection, as he had

attended to the collection of coupons, as a duty assumed by him, as the negotiator of the loan, toward the plaintiff as its purchaser, for the promotion of his brokerage business. No instructions were given to the defendant as to the course to be pursued in collection. The defendant at once sent the note to Burr and Knapp, and instructed them to collect the same and remit the money to him. Prior to this time the Trust Company, with the consent of the holders of the other two Colley notes, had agreed with Colley to extend the loan for a period of five years. Colley had executed three new notes and a new mortgage of the same land to secure the new notes, to a company called the Security Investment Company, but what this new company was, or where located, the evidence did not disclose. It was the judgment of the Trust Company that it was for the interest of the holders of the original Colley notes that the first mortgage should not be foreclosed. These facts were unknown to the plaintiff when he placed his note in defendant's hands for collection, nor were they discovered by him for a long time thereafter. Burr and Knapp on receipt of the note forwarded it to the Trust Company, and it at once delivered the note to Colley, and it was by him presumably destroyed. The three renewal notes were payable in five years from date, with interest at seven and one half per cent per annum payable annually. One of these renewal notes was sent by Burr and Knapp to the defendant, and he tendered it to the plaintiff who refused to accept it, and demanded the original note or the money due on it. The plaintiff then for the first time learned of the existence of the firm of Burr and Knapp, and the business relations of the defendant with them, and that others besides himself were interested in the loan.

Upon these facts the defendant claimed, among other things, that the Trust Company was not the agent of the defendant, but was the trustee and agent of the plaintiff; and that the defendant in forwarding the note in due course of business to the Trust Company with instructions to collect, had performed his duty to the plaintiff and was not liable for the default or misconduct of the Trust Com-

pany. The court overruled these claims, and held that the defendant was an independent contractor for the collection of the note; that Burr and Knapp and the Trust Company were the agents of the defendant and not of the plaintiff; that there had been a conversion of the note; that defendant was liable for a failure to return either the note or the money; and rendered judgment for the amount of the note and interest.

It appears from this finding that the Georgia Loan and Trust Company, either as the agent of the plaintiff or of the defendant, wrongfully delivered up to Colley the property of the plaintiff so that it became lost to him. If in so doing the Trust Company was the agent of the defendant, then he is liable for the damage thereby occasioned to the plaintiff; but if it was the agent of the plaintiff, then the defendant is not liable for such damage. As a conclusion of law from the facts found, the court below held that the Trust Company was the agent of the defendant and not of the plaintiff; and whether it erred in so holding is the principal question upon this appeal.

The law applicable in cases of this kind is tolerably well settled. As a general rule, an agent has no right to delegate his authority to a sub-agent without the consent of his principal. If without such consent he does delegate his authority, the sub-agent whom he appoints will be regarded as his agent, and not the agent of the principal. On the other hand, if an agent has the consent and authority of his principal to employ a sub-agent, he may employ one; and if in so doing he in good faith selects a suitable and proper sub-agent, he is not responsible to his principal for the acts and omissions of such sub-agent. Furthermore, this consent and authority from the principal to the agent to employ a sub-agent, may be given expressly or by implication. Story on Agency, § 201; Evans on Principal & Agent, Chap. 6, § 2; Mechem on Agency, § 513.

Bearing in mind these principles, it is clear that the question whether or not the Trust Company was the agent of the defendant for whose acts he was responsible, depends on

the answer to the further question, whether the plaintiff expressly or impliedly authorized the defendant to forward the note to that company for collection. If he did, then the Trust Company was the agent of the plaintiff, and not of the defendant. As no claim is made that there was any express authorization of this kind, the inquiry is narrowed down to this: do the facts found warrant the conclusion, as matter of law, that there was an implied authorization?

The court below must necessarily have held that there was no such implied authorization, and in this we think it erred. Upon the facts found and as matter of law, we think the plaintiff impliedly authorized the defendant to employ the Trust Company to collect the note. The facts in this case are somewhat peculiar. The defendant was not a collection agent, nor an attorney at law engaged in the collection of claims; his principal business was that of a broker and negotiator of loans and investments. As such he had acted as the agent of the Trust Company in selling the note in question, and this was known to the plaintiff when he bought the note. He was not engaged personally and for profit in the collection business, and did not hold himself out as such a collector. It is true that he had collected the interest coupons for the plaintiff upon this note, and doubtless he did the same thing for other customers; but this was done incidentally as a matter of favor to those customers and without charge for such services, for the purpose, no doubt, of retaining their custom as purchasers and investors. When the note became due the defendant undertook to collect that, just as he had the interest on it, as an accommodation to his customer, and without fee or reward other than the advantages that might possibly spring from retaining the good will of the customer. This statement is, we think, a fair inference from the finding upon this point. Then again, the facts relating to the note itself are somewhat exceptional in their nature. It was secured by a mortgage deed of land in Georgia, made to the Georgia Trust Company as trustee for the plaintiff as the holder of the note; and that mortgage deed was in the hands of the trustee, and could be foreclosed only

in Georgia by a proceeding in the name of the trustee. At the time the note was delivered to the defendant to collect, there was nothing to indicate that it could be collected except by resorting to the security by means of a foreclosure suit; and the natural and ordinary way to do this, and for aught that then appeared the best way, was to forward the note to the trustee with instructions to collect it by foreclosure proceedings, unless the note was paid on demand. It was the duty of the trustee to bring the foreclosure on request, or at least to allow the proceeding to be brought in its name, and this could only be done in Georgia where the maker of the note lived and where the property mortgaged was situated. No good reason for not pursuing such a course was then known to plaintiff or defendant; neither of them then knew that the Trust Company had already made a new arrangement with Colley; and neither of them had any reason to anticipate that the Trust Company would wrongfully surrender the note. All these things the plaintiff knew just as well as the defendant. He must have known that the plaintiff was not to go personally to Georgia to collect the note; he must have known that the collection of the note could probably be enforced only by a resort to the security; he must have known that the only natural and feasible way to enforce the security was through his trustee, the Georgia Trust Company; and he must have known that the defendant would be in a measure compelled to select the Trust Company as a sub-agent in this matter, and to intrust to it the note in question. It was under and in view of all these circumstances that the defendant made the agreement to collect the note, and looking at them all, we think the legal conclusion must be that the plaintiff impliedly authorized the defendant to employ the Trust Company in this matter and to forward to it the note in question for collection.

The principles applied in *East Haddam Bank* v. *Scovil*, 12 Conn., 303, fully justify this conclusion; and the facts in the present case are much stronger in favor of such a conclusion than were the facts in that case.

The duty which devolved upon the defendant by virtue of

his undertaking, he fully performed. He promptly and safely forwarded the note to the trustee, with instructions to make immediate collection. The fact that he did this through Burr and Knapp is of no legal significance. They were guilty of no delay in forwarding it, and of their conduct in this respect the plaintiff makes no complaint. The only thing he really complains of is the conduct of his trustee in wrongfully giving up the note. That was undoubtedly a wrong amounting to a conversion for which his trustee is legally answerable; but as his loss resulted from the act of his own agent he must look to him and not to the defendant.

This view of the case renders it unnecessary to consider any of the other points raised on the appeal.

There is error in the judgment of the court below and it is reversed.

In this opinion the other judges concurred.