Grafton,
June 23, 1932.

PETER LAVOIE

*v.*

NORTH BRITISH & MERCANTILE INSURANCE COMPANY *& a.*

*Walter M. Flint*, for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers (Mr. Franklin Hollis* orally), for the National Fire Insurance Co.

*Thorp & Branch (Mr. Branch* orally), for the other defendants.

ALLEN, J. The essential issue is of the validity of the cancellation of the first policy. If it was not cancelled before the fire, liability on it ensues to the exclusion of liability on the substituted policies. In defending against liability on the substituted policies the insurers issuing them were entitled to seek to prove as a determinative fact the continuance in force of the first policy at the time of the fire. What the plaintiff had done, by himself or through agency in his behalf, and the authority of such agency to act in his behalf, became material. The plaintiff might waive the right to the ten day notice required to make cancellation by the insurer effective, and whether such a waiver was made before the fire was a decisive issue.

The circumstance that the policy clause providing for such notice is designed only for the insured's benefit has no bearing in this consideration. Granting such a purpose of the clause, the question remains if the plaintiff yielded such advantage as it gave him. By the court's ruling the substituted insurers were barred from contesting the issue of the insured's waiver. But the first insurer may not prove cancellation of its policy without showing the waiver, since the waiver was a requisite to a cancellation validly accomplished before the fire. It follows that the other insurers may undertake to meet such proof and dispute the claim of waiver.

There is no ground for an estoppel against them. No equities exist among the insurers entitling one to a position free from attack by

the others in showing the actual situation. The first insurer may not say its cancellation was effective because only the insured had the right to claim otherwise. What the insured in fact did, in waiving or not waiving his rights, may be shown. In ascertaining if he took advantage of his rights or waived them, no advantage over him is taken. If it was a matter between him and the first insurer, yet what was done in regard thereto affected and determined the liability of the other insurers. The existence or termination of a contractual relation between the insured and the first insurer when the other policies were written is a controlling matter of inquiry. If the existence of the relation may not be shown,. then the first insurer would profit from a cancellation which the contract holds incomplete.

As the record stands, the plaintiff's position is one of neutrality. One, and one only, of the defendants is liable and it is immaterial to him on which one liability is imposed. He seeks recovery against such one of them as may, after contest among themselves, be held as his insurer at the time of the fire. But if his suit had been against the last insurer only, it is not perceived how it would be justly estopped from undertaking to show that he had not in fact before the fire waived his rights under the first policy. It would seem that it might meet the issue of waiver as well as to show the policy clause relating to cancellation by the insurer. The insured's right to waive does not prevent inquiry into the issue of his exercise of the right. The insurer's cancellation was not forthwith effective against everyone save the insured. It was no more operative against others than against him.

The ruling was therefore wrong and it was error not to consider the evidence relating to waiver.

Inquiry is left if there is evidence from which a finding of waiver may or must be made. The plaintiff personally did not waive, and the scope of the authority he gave others to act for him is to be considered. This issue is to be decided by applying the general principles of the law of agency. There are no technical or special rules of insurance agency to affect them. The cases of *Federal Insurance Co.* v. *Sydeman*, 82 N. H. 482, relied upon by the first insurer, and of *Stebbins* v. *Insurance Co.*, 60 N. H. 65, cited by the last insurer to support its position, lay down no rules in restriction or enlargement of the usual doctrine of scope of authority as a simple issue of fact. In each case the particular facts were considered to determine whether agency existed or might be found.

The findings that the plaintiff was indifferent how and in what companies the insurance was to be placed, that Kimball was author-

ized to do whatever was needed to procure the insurance, and that he was free to act in any way that would secure it, demand the conclusion that the plaintiff put Kimball in his place without restriction in representing him. He gave Kimball all of his standing as the insured in obtaining the insurance. In his general charge of the business Kimball was empowered to use his own judgment and had free rein to act. Whatever was reasonably incidental in promotion of his engagement was authorized. And the engagement continued until he had policies ready for delivery to the plaintiff.

It is a necessary implication that the plaintiff sought insurance in companies which would be satisfied to carry the risk. He desired satisfactory insurance, and insurance not acceptable to the insurer beyond the temporary binding power of its agents could not be fully desirable. Insurance which was only temporary was not a satisfactory fulfillment of the engagement, except as it might be a step in the process of reaching the final objective. Any narrower purpose would be too unreasonable to find. It follows that it was within Kimball's engagement, under his unrestricted authority, to obtain insurance acceptable to the insurers.

As the business of placing insurance is conducted, risks are bound by the agent with immediate notice to the insurers, which may escape more than temporary insurance by availing themselves of the ten day notice of cancellation. Since the plaintiff sought insurance which would not be thus cancelled, Kimball had the incidental authority to accept the insurer's notice of cancellation and, as an entire transaction, to waive the time limit in the substitution of other insurance. Having all of the rights of the insured in procuring the insurance, he necessarily had the incidental right to act freely in substituting one policy for another. Authority to substitute other insurance for that written but proving unacceptable to the insurer, as a measure in the course of finding satisfied insurers, in order to be freely exercised included authority to shorten the life of unsatisfactory insurance. Otherwise a limitation would be interposed inconsistent with the unrestricted scope of the engagement. As was found, how the insurance was placed did not concern the plaintiff.

In like manner Kimball's general charge of the business gave him authority to engage other agents to procure the insurance so far as he could not obtain it himself. Such an engagement was necessary to enable him to fulfill his own engagement. The plaintiff was informed of this course of action, and made no protest so far as appears.

Any view of the scope of the engagement of the sub-agent giving

him less delegation of authority as to the manner and method of obtaining his part of the insurance than the agent had, would be unreasonable. The objective of satisfactory insurance implied the right of the sub-agent to cancel policies not giving it. Disapproval of the risk by an insurer definitely made its policy unsatisfactory. For the sub-agent to consult the agent before cancelling it upon the substitution of another would be an idle futility of action which it could not be sensible to call for. The reasonable despatch of the business to be done dispensed with so useless a formality. The insurer's dissatisfaction proving the insurance to be unsatisfactory to the insured, the sub-agent was thereby informed that other insurance was desired, to be obtained in any way that would avoid delay and useless procedure. The right of the sub-agent to cancel unsatisfactory insurance when there was no question of such a character of it inevitably followed.

In supporting force of this conclusion it was found that "all of the agents cooperated efficiently to accomplish what the plaintiff desired and authorized to have accomplished in his behalf." If in view of the other findings this finding does not show the full delegation to the sub-agent of the agent's authority in obtaining the insurance allotted to it, in any event the other findings are in all respects consistent with it.

Also, in the course of the hearing counsel for the substituted insurers introduced in evidence through a witness a letter from the sub-agent to the agent stating that the first policy was being held in its office to see if the insurer would accept the line. This made it clear that in the absence of objection both of them understood that full delegation of authority had been given, and, as already appears, the agent's broad latitude of discretion entitled him thus to delegate. If he reserved a right to pass upon policies delivered him by the sub-agent as satisfactory, it is not a question presented here. It is still the fact that he gave the sub-agent the right to determine if a policy was unsatisfactory because it was not acceptable to the insurer and to proceed in its own way to obtain in its place one it regarded as acceptable to the insured.

Thus the court's decree made its error harmless. In view of the conclusion reached other exceptions and points raise moot questions.

*Decree affirmed.*

BRANCH, J., did not sit: the others concurred.

ON REHEARING. After the foregoing opinion was filed the defendant North British & Mercantile Insurance Company moved for a rehearing.

*Thorp & Branch*, for the motion.

No brief in opposition was submitted.

ALLEN, J. The motion argues a number of grounds for its support. In some measure indicating a misconception of the scope and effect of the opinion, the argument contains no points making doubtful the conclusions heretofore reached.

Claim is made that the authority of the sub-agent to waive the insured's right to the ten day notice of the insurer's cancellation, provided the policy remains undelivered by the sub-agent and other insurance replaces it, is not a necessary incident of the general authority the insured has given to obtain insurance for him. The business might be done without that incident, it is true. It is not a necessary incident and for the sake of argument may even be assumed an undesirable one. The inquiry remains, what authority was in fact given. Since, in summary, the plaintiff made Kimball his *alter ego* in obtaining the insurance and the sub-agent might do anything fairly serving his assignment to obtain part of it, the only reasonable conclusion is that the right to waive was given as an incident within the scope of authority. Not a necessary incident, it was yet one the evidence made it necessary to find. How much authority was given, and not how much had to be, is the issue.

The relations between the insured and the agent or sub-agent are such as the evidence discloses. The law does not undertake to prescribe or regulate them. It only applies the general and simple rule of the principal's responsibility for his agent's authorized acts. The insured either gives or withholds authority. If he gives it, he is bound by conduct pursuant to it. The extent of authority is to be ascertained as matter of fact. As matter of law the agent's conduct is chargeable to the principal if it comes within the extent. The facts, whether undisputed or contested, being ascertained and known, the principal's responsibility follows as a legal result if the facts disclose authority. *Federal Insurance Co.* v. *Sydeman*, 82 N. H. 482, 485, 486. The opinion states and employs no other rule. It declares no doctrine of policy and gives no special legal consequences to the agent's engagement. No unusual or particular legal incidents or

features are held to control the arrangements entered into between an insured and an insurance agent, and no rules are adopted with reference thereto subordinate or auxiliary to the general rule of responsibility for authorized conduct. In each case the terms of the engagement are to be considered, to show if the conduct in question is within them. In ascertaining the terms the established principle that they include not only those expressed but as well those necessarily or reasonably to be implied, is employed.

It is said that the opinion is inconsistent with the cases of *Stebbins* v. *Insurance Co.*, 60 N. H. 65, and the *Sydeman* case above cited.

In the *Stebbins* case, cancellation by the insurer was not effective until the insured had notice of it. It was held that a sub-agent might not cancel without the notice after he had delivered the policy to the insured's agent. The situation was unlike that here, where the sub-agent cancelled a policy retained in his possession. Upon delivery the sub-agent's mission is completed, and his authority to act further is therefore at an end.

It is also to be noted that in the *Stebbins* case two policies were successively issued and cancelled by the sub-agent before their delivery and without notice to the insured. This was prior to the issue of the one undertaken to be cancelled after delivery. These prior policies were regarded as discharged from liability, since the court expressed the view that the one cancelled after delivery was validly in force. In this aspect not only is there here no conflict with the case but it is followed. Authority to receive notice and authority to waive, the former as treated in the *Stebbins* case and the latter as here dealt with, both rest upon the same considerations of what the insured authorized others to do for him.

In the *Sydeman* case the agent was to keep the property insured. Hence his authority was a continuing affair, whoever had the possession of the policies, and it was for him to maintain in force a certain amount of insurance with no time limit set on the duration of the engagement. Being in the insured's place, he necessarily had authority after delivery of a policy to waive the time limit required to make the insurer's cancellation effective. Here the engagement was only to obtain insurance. When it was obtained, there was nothing more for the agent to do under his employment. The work for which he was hired was in fact completed when he had on hand policies acceptable to the insurers.

If a policy at first acceptable to the insurer is later and before delivery cancelled by it, the agent's authority to represent the insured

both as to notice of the cancellation and as to waiver of the time limit would depend upon the terms of the arrangement, express and implied, between him and the insured. The issue would be one of fact to show if such representation was an incident of his authority. The opinion expresses no views upon such a situation. Under the facts here, when the policies were ready for delivery, the insurance was obtained, and the objective of Kimball's service for the plaintiff was accomplished. The statement of the opinion that the engagement continued until policies were ready to be delivered is not to be construed as holding that all incidental authority was thereupon terminated regardless of what might later happen. Nothing did happen to extend the authority beyond the placing of satisfactory insurance. There is no occasion to consider the evidence of authority in respect to possibilities that did not become material events.

Repeating what is said in the opinion, the *Stebbins* and *Sydeman* cases turn on their respective facts to show whether the agent's conduct was authorized or not, and no other or different test is here adopted. Neither of those cases nor this one states any principle of responsibility for an agent's acts beyond that by which authority given imposes responsibility for them. In the *Stebbins* case delivery of the policy brought the agency to an end, in the *Sydeman* case the facts showed the agency to continue after delivery, and here the issue of policies ready for delivery achieved the purpose of the agency. All the cases are governed by the same rule.

*Former result affirmed.*

BRANCH, J., did not sit: the others concurred.