Guy PASSARELLO d/b/a/
Tri–Crest Egg Farm,

v.

LEXINGTON INSURANCE
COMPANY, et al.

Civ. No. H–89–66 (PCD).

United States District Court,
D. Connecticut.

July 10, 1990.

**934**

Peter Rustin, Peter N. Upton, Tarlow, Levy, Harding & Droney, P.C., Farmington, Conn., for plaintiff.

Frank F. Coulom, Sally S. King, Robinson & Cole, Hartford, Conn., for defendants.

Matthew E. Karanian, John B. Farley, John W. Lemega, Halloran, Sage Phelon & Hagarty, Hartford, Conn., for Lexington Ins. Co.

Richard C. Robinson, Sorokin, Sorokin, Gross Hyde & Williams, Hartford, Conn., for Alexander Howden North America, Inc.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff seeks damages resulting from a fire which destroyed plaintiff's chicken farm. Defendant Lexington Insurance Company ("Lexington") allegedly breached its contract of insurance by paying only $1,000,000 rather than the $1,285,000 in fire coverage and $200,000 in business interruption coverage allegedly provided by the policy. Plaintiff claims the loss exceeds $1,467,080. Plaintiff alleges that the remaining defendants, Fred S. James & Company of Georgia, Inc. ("James") and Alexander Howden North America, Inc. ("AHNA"), failed to exercise reasonable care in causing Lexington to issue an insurance policy other than in the amount requested by plaintiff. Lexington and AHNA move for summary judgment.

*Facts*

Plaintiff owned a chicken farm and in August 1987 plaintiff sought insurance against fire loss, among other things. Plaintiff claims he asked James to obtain coverage of $1,285,000 for property loss and $200,000 for Business Interruption. Complaint at ¶ 9. James contacted AHNA, a wholesale insurance broker, which acted as an intermediary broker between James and Lexington.

On August 12, 1987, Lexington issued a policy insuring plaintiff's farm, ¶ 6, stating the coverage on the face of the policy, which was not transmitted to plaintiff until March 23, 1988, as $1,285,000 per occurrence. ¶ 6, Exhibit A. An endorsement, prepared by AHNA and executed by Lex-

ington, altered the coverage to $1,000,000 per occurrence. Affidavit of Edna Lowry at ¶ 23–26; *see* Exhibit Z, attached to Affidavit of Edna Lowry. On April 11, 1988, approximately two weeks after plaintiff received the policy documents, a fire destroyed the farm causing damage in excess of $1,467,080.78. Lexington has paid $1,000,000, the amount it claims is covered by the policy. Defendants claim plaintiff only requested coverage of $1,000,000.

*Discussion*

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 313 (2d Cir.1981). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group, Inc. v. London American Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981), quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). Not only must no genuine issue as to the evidentiary facts exist, but no controversy regarding the inferences drawn from them may exist, as well. *Schwabenbauer,* 667 F.2d at 313. In determining whether a genuine factual issue exists, the court must "resolve all ambiguities and draw all reasonable inferences against the moving party." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

### 1. *AHNA's Motion for Summary Judgment*

AHNA moves for summary judgment claiming that it owes no duty to plaintiff and was not negligent in procuring the policy. Dealing exclusively with retailers, AHNA contends it acted as James' agent. AHNA argues that it was not acting as plaintiff's insurance broker and owed no duty to plaintiff.

■ An insurance broker owes a duty to the insured to "exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which he undertakes to secure will render him liable to his principal for the resulting loss." *Ursini v. Goldman,* 118 Conn 554, 559, 173 A. 789 (1934); *Dimeo v. Burns,* 6 Conn. App. 241, 244, 504 A.2d 557, *cert. denied,* 199 Conn. 805, 508 A.2d 31 (1986); *see also Beacon Indus. Inc. v. Walter Kaye Associates, Inc.,* 789 F.2d 172, 174 (2d Cir.1986). An insurance broker is defined as

any person partnership association or corporation who or which for compensation, acts or aids in any manner in negotiating such contracts, or in placing risks or soliciting or effecting insurance as agent for a person other than himself, and not as an officer, traveling salaried employee or licensed agent of an insurance company

Conn.Gen.Stat. § 38–69. *See also Ursini,* 118 Conn at 559, 173 A. 789. The broker is the agent of the insured in negotiating a policy and as such owes a duty of care to his principal. *Id.; see also* Appleman, Insurance Law and Practice, Volume 16A § 8841 p. 171. A broker acts as the middleman between the insured and the insurer. *Ursini,* 118 Conn. at 559, 173 A. 789; *see also Lewis v. Michigan Millers Mut. Ins. Co.,* 154 Conn. 660, 664, 228 A.2d 803 (1967), citing Appleman, Insurance Law & Practice, Vol. 16 § 8726 p. 338.

■ Having received an order from James to procure insurance for plaintiff, AHNA acted as plaintiff's subagent. As plaintiff's agent, James was authorized to appoint a subagent. *Rayden Engineering Corp. v. Church,* 337 Mass. 652, 151 N.E.2d 57, 62–63 (1958) (an employee of insurance broker, who failed to obtain insurance coverage, may be liable as subagent of insured); *see also United States v. Mendoza–Acuna,* 764 F.2d 699, 702 (9th Cir.1985) (" '[A]uthority to conduct a transaction includes authority to delegate to a subagent the performance of incidental mechanical and ministerial acts.' Restatement (Second of Agency § 78)." A sub-

agent is " 'a person to whom the agent delegates, as his agent, the performance of an act for the principal which the agent has been empowered to perform through his own representative.' " *Rayden,* 151 N.E.2d at 63, citing, Restatement: Agency, § 5. If the agent is authorized, expressly or impliedly, to select a subagent and does so in good faith, the agent is not liable to the principal for the subagent's negligence. *Davis v. King,* 66 Conn. 465, 472 (1895); *Rayden,* 151 N.E.2d at 63, n. 1. The subagent stands in a fiduciary relationship to the principal and is subject to the same liabilities as an agent. *Rayden,* 151 N.E.2d at 63, n. 1.

■ AHNA claims that it cannot be liable as a subagent because plaintiff neither expressly nor impliedly authorized James' appointment of AHNA. This argument lacks merit. While there is no evidence of an express authorization, the facts suggest that authorization may be found by implication. Faced with the same question in *Davis,* the plaintiff was held to have impliedly authorized the defendant, an investment broker, to employ an investment brokerage firm to collect on a note plaintiff purchased from the broker. 66 Conn. at 473 (plaintiff had no knowledge of the appointment of the brokerage firm and its business relations with the broker until after the fact). Significantly, plaintiff knew defendant was not a collection agent and defendant did not hold himself out as such. *Id.* Similarly, James did not hold itself out as a primary insurer. Plaintiff did not anticipate that James would personally or directly insure plaintiff's property. Plaintiff knew James was an insurance brokerage firm and hired it to secure an insurance package from an insurer. Deposition of Guy Passarello at 15–20, 27–28. Plaintiff's request that James secure appropriate insurance coverage could be found to have implicitly authorized James to employ a subagent to effect the order if it was unable to do so by itself.

"Full power to procure fire insurance for another includes whatever is reasonably incidental thereto ... [including] the power to engage subagents or to delegate authority." Appleman, Insurance Law & Practice, Vol. 16, § 8723 pp. 324–325, citing, *Lavoie v. North British & Mercantile Ins. Co.,* 85 N.H. 550, 161 A. 376, *aff'd* 85 N.H. 550, 162 A. 182 (1932). This is precisely what plaintiff requested and authorized James to do. Plaintiff placed an order and James sought the aid of an agent to perform that task. There is no evidence that plaintiff restricted James from doing so. Both James and AHNA were agents of the plaintiff, acting as middlemen between him and Lexington. As a subagent AHNA owed plaintiff a duty to exercise reasonable skill, care and diligence in effecting the insurance he requested.

■ AHNA next contends that, even assuming it owed plaintiff a duty of care, it is entitled to summary judgment because it did not act negligently. AHNA claims that since it had no contact with plaintiff and did exactly what James asked it to do, it could not have been negligent. Plaintiff, however, has come forth with evidence that raises a question of fact as to whether AHNA acted with reasonable care and diligence with respect to plaintiff's account, as required by *Ursini.* Edna Lowry, an employee of AHNA handling plaintiff's account, testified that she noticed a discrepancy between the amount of insurance listed on the binder received from Lexington, $1,285,000, and the amount of coverage purportedly requested by plaintiff, $1,000,-000. Deposition of Edna Lowry at 61–64; Affidavit of Edna Lowry ¶¶ 15–17. Rather than confirm plaintiff's request with James or plaintiff, Lowry waited one week prior to notifying Lexington of the apparent discrepancy. *Id.* In response to plaintiff's counsel's inquiry with respect to the delay, Lowry commented that "[a] week is good, sir. Wait until you see how long it took to get the policy out?" *Id.* at 64. Indeed, it took approximately eight months for the final policy to be transmitted to plaintiff through James. Affidavit of Lowry ¶¶ 24–26. Lowry admitted that the delay was caused in part by her inaction and that of her assistant in following up with Lexington because she was too busy and her assistant was a few months behind. Deposition of Lowry at 72–74.

When the policy was finally forwarded to AHNA on or about November 17, 1987, it once again listed the insurance amount on the declaration page as $1,285,000. Affidavit of Lowry ¶ 20. Without conferring with James or plaintiff, Lowry and Lawrence Testa, a Lexington employee handling the account, decided to prepare an endorsement altering the policy amount on the cover of the policy to $1,000,000. Affidavit of Lowry ¶ 22. It took another four months for AHNA and Lexington to complete the endorsement and send out the policy. *Id.* ¶¶ 20–24. Contributing to the delay was AHNA's failure to prepare the endorsement in a timely fashion and follow up on its execution. *Id.* ¶ 23. Because Lowry's assistant was delinquent, AHNA failed to inquire as to the status of the endorsement when Lexington did not return it for two months. Deposition of Lowry at 98. This evidence raises a question of fact as to whether AHNA exercised reasonable care and diligence in carrying out James' request and securing a policy for plaintiff.

Contrary to AHNA's claim, the delay was not rendered insignificant by plaintiff's receipt of written confirmation of insurance in the amount of $1,000,000 on or about August 12, 1987. Exhibit N attached to Affidavit of Lowry. While plaintiff acknowledged receipt of such notice, he testified that he noticed the discrepancy and called Venetia Poole, an employee of James, to have the policy coverage corrected to $1,285,000, according to his original request. Deposition of Guy Passarello at 23–25. After an eight month delay and approximately three weeks prior to the fire, plaintiff received a policy which on its face revealed an insurance coverage amount of $1,285,000, although modified to $1,000,000 by attached endorsement. Plaintiff never signed the endorsement but claims he called Venetia Poole at James to complain about the discrepancy. Deposition of Passarello at 66. Plaintiff claims the delay in receiving the policy and errors in it led to his injury. According to Lowry, she begged Testa to change the policy rather than to alter the amount by endorsement, Deposition of Lowry at 87, presum-

ably because it would be less confusing. It would not be unreasonable for a jury to determine from these facts, and the question of why the endorsement was added, that AHNA failed to exercise care and diligence in handling plaintiff's account. Thus, a question of fact exists as to whether AHNA complied with its duty of care.

2. *Lexington's Summary Judgment Motion*

■ Lexington does not contend it owed no duty to plaintiff. Rather, it claims it met its duty of care and cannot be found to have acted negligently when it did precisely what AHNA requested. While conceding a clerical error on the declaration page and policy, Lexington claims it was corrected by endorsement prior to being sent to plaintiff. Testa admitted he filled in the value of the property, $1,285,000, as the amount of insurance. Affidavit of Testa ¶ 9.

The evidence submitted indicates a series of errors and delays in the completion and transmission of the policy. Lexington could be found to have caused the delay by committing the alleged error on the cover note and later submitting a policy with the same amount listed. Affidavit of Lowry ¶¶ 15, 20. In addition, Lexington took an unusual amount of time in submitting the policy and endorsement to AHNA. Deposition Lowry at 72, 99–101. Having made an alleged error which caused a substantial delay, Lexington chose to correct the alleged error in a more ambiguous manner. Plaintiff claims he consistently requested insurance in the amount of $1,285,000. Defendants deny such a request and claim plaintiff requested only $1,000,000. The existence of documents reflecting both figures and delays in submitting a policy, suggest a question of fact exists as to the proper amount of the policy and whether defendants acted negligently. Thus, the record indicates a question of fact exists as to whether Lexington exercised proper care in issuing the policy.

■ In addition, Lexington claims that it cannot be liable for AHNA and James' negligence under a theory of respondeat superior because they are not agents of

Lexington. As insurance brokers, James and AHNA acted "for the insured in ... obtain[ing] a policy, ... [but acted] for the insurer in delivering the policy and in collecting and remitting the premiums." *Teleco Oilfield Services, Inc. v. Skandia Ins. Co.*, 656 F.Supp. 753, 757 (D.Conn.1987) (citations omitted) ("In essence, in the course of the procurement and the subsequent performance of an insurance contract, the broker acts as a dual agent."). Thus, Lexington may be liable for AHNA and James' negligent acts during the course of the procurement and issuance of the insurance contract.

*Conclusion*

Accordingly, defendant's motions for summary judgment are denied.

SO ORDERED.