WILLIAM A. HEAPHY & another, executors, *vs.* ERNEST L. KIMBALL, administrator.

Berkshire.    September 17, 1935. — February 24, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Practice, Civil,* Auditor: drawing of inferences from findings.   *Contract,* What constitutes, To procure insurance.

The report of an auditor whose findings of fact were to be final was in effect a case stated and the trial court could draw from the facts found an inference different from that drawn by the auditor.

An insurance agent did not become personally bound to procure a policy of fire insurance merely by his receipt of the premium, his undertaking to attempt to procure a policy, and his failure to notify the owner of the property of his inability to do so before the property was burned.

CONTRACT.   Writ in the District Court of Southern Berkshire dated May 17, 1933.

Upon removal to the Superior Court, the action was referred to an auditor whose findings were to be final. Judgment for the defendant was ordered by *Donahue,* J., upon the auditor's report.   The plaintiffs alleged exceptions.

*W. A. Heaphy,* (*T. F. Conneally* with him,) for the plaintiffs.

*F. H. Wright,* for the defendant.

RUGG, C.J.   This is an action of contract in which the original plaintiff, one Race, sought to recover the value of hay destroyed by fire by reason of the alleged failure of the original defendant, one Frein, to procure fire insurance on the hay.   Both the original parties have died and the case is being prosecuted by the executors of the original plaintiff and defended by the administrator of the original defendant.   For convenience reference will be made to the original parties as the plaintiff and defendant.   The declaration alleges an agreement between the parties whereby the defendant on May 8, 1928, agreed to extend insurance of $2,000 on the hay (among other items not now in issue)

and failure on the part of the defendant to perform the contract. The case was referred to an auditor, whose findings of fact were to be final. Thus it appears that for many years prior to January 10, 1928, the plaintiff procured considerable fire insurance covering a variety of properties through the defendant or his firm. Their relations had been on the footing of mutual confidence, respect and friendship. The plaintiff had owned a farm. On January 10, 1928, the plaintiff told the defendant that he had arranged to sell his farm; he requested the defendant to cancel the insurance on his personal property at the farm and instructed him to procure new and separate policy or policies of insurance in a total of $4,000 for four months, $2,000 being on the hay; the other items are not involved in this action. The defendant advised a different course and told the plaintiff it was not as easy to insure property for a tenant as for an owner, and that it was difficult to secure insurance on personal property in farm buildings insured by other companies. The plaintiff insisted on having separate insurance placed on his personal property and paid the defendant the premiums for all the desired insurance. The defendant represented about twenty-five insurance companies and as agent had authority to bind risks and effect fire insurance, subject in all cases to final acceptance or rejection by the insurance company, coverage on risks in such instances to be valid until rejection. The defendant, in 1928, as the plaintiff knew, was not in business as an insurer or, in the absence of special agreement, as an indemnitor of those applying to him to have insurance effected. During the four months subsequent to January 10, 1928, the defendant bound the insurance desired by the plaintiff with a great many different fire insurance companies, but was not able to get any company to accept the risk and issue a policy. As no company would accept the risk at any time during this period, the defendant did not expend the money advanced by the plaintiff to pay the premiums. The defendant did not inform the plaintiff of his inability to obtain acceptance of the risk. On May 8, 1928, the plaintiff told the defendant that he had been

unable to move the hay, instructed the defendant to renew the policies or to procure for him fire insurance on the hay in the amount of $2,000, and paid him the amount of the premiums. Again, as before, the defendant told the plaintiff it would be difficult to write the desired insurance. On May 18, 1928, the defendant finally caused to be written a policy on the hay in the sum of $1,000 in the National Union Fire Insurance Company. Between May 8 and May 22, 1928, the defendant did not inform the plaintiff that he had not procured the amount of insurance desired and the plaintiff supposed his property was covered and relied on the defendant to do it. On May 22, 1928, the hay, having a fair market value of $1,612.50, was entirely destroyed by fire. The plaintiff made no request before the fire for the delivery of any policy to him. The defendant had never in the past delivered fire insurance policies to the plaintiff because the properties were mortgaged and the policies were left with the mortgagees. He could have delivered to the plaintiff the policy in the National Union Fire Insurance Company for $1,000, but did not do so until about three weeks after the fire. Later, the plaintiff asked the defendant to make a claim for him under the policy. This the defendant did although that was not his custom. At no time did the plaintiff make comment or objection as to the terms or amount of this policy. Subsequently, the plaintiff settled this policy with an adjuster of the insurance company for $10. The defendant took no part in inducing the plaintiff to make this settlement. The only consideration received by the defendant from the plaintiff in connection with this insurance was the giving of the business to the defendant by the plaintiff and the resultant commission to be received by the defendant in placing the insurance. The defendant "did not expressly agree to become personally liable to the plaintiff in the matter," yet the plaintiff at all times relied upon the defendant to procure the insurance coverage desired. The above constitute all the ultimate or subsidiary facts found by the auditor upon which the rights of the parties are to be determined as matter of law.

The auditor further stated in his report: "In so far as it is a question of fact and within my province so to do, I find that on May 8, 1928, the defendant entered into a contract with the plaintiff under the terms of which the defendant assumed the obligation of procuring for the plaintiff the amount of insurance coverage requested by the plaintiff."

The plaintiff filed a motion for the entry of judgment in his favor for the amount found due by the auditor. That motion was denied. An order was made that judgment be entered for the defendant. The exceptions of the plaintiff bring the case here.

In point of procedure the case at bar conforms to the principles stated in *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147, 151, 152, 153, and is governed by that decision. The ultimate and subsidiary facts set forth in the auditor's report were in effect a case stated. "If the auditor reports the facts on which his conclusions are founded, and these facts are not sufficient in law to support the conclusions, the court should instruct the jury accordingly; and such instructions, being upon a pure question of law, may be revised by a bill of exceptions." *Fair* v. *Manhattan Ins. Co.* 112 Mass. 320, 331.

It is manifest that the auditor's report in the case at bar contains (1) a report of the ultimate and subsidiary facts found by him and (2) a statement of the conclusions drawn by the auditor from those facts. The precise question is whether the ultimate and subsidiary facts found warranted a judgment in favor of the plaintiff. It was the duty of the trial judge to enter the correct judgment required by those ultimate and subsidiary facts. As matter of practice the trial judge on this report was warranted in drawing from the ultimate and subsidiary facts found a different conclusion from that of the auditor. *Blackington* v. *Johnson*, 126 Mass. 21, 23. *Fisher* v. *Doe*, 204 Mass. 34, 40. *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147, 153. *Prendergast* v. *Sexton*, 282 Mass. 21. *Zarthar* v. *Saliba*, 282 Mass. 558.

Nothing set forth in the findings of fact discloses a con-

tract by the defendant with the plaintiff on May 8, 1928, to procure the insurance. The auditor states categorically that the defendant did not expressly agree to become personally liable in the matter. All that occurred on May 8, 1928, between the parties, as set forth in the report of the auditor, has been recited. All that was said by the defendant indicated that no insurance had been procured except the temporary though continuous coverage for short periods and a reiteration of what had been said to the plaintiff before to the effect that it would be difficult to write the insurance. The advance payment of premiums by the plaintiff in all the circumstances does not support the conclusion that an absolute contract was made. The fact that the defendant did not notify the plaintiff of his failure to get insurance is not of decisive consequence. The single policy was procured only four days before the fire. This conversation and course of conduct do not support the conclusion that the defendant entered into a contract with the plaintiff to procure for the plaintiff the desired insurance. The strongest inference of which it is susceptible is that the defendant would use reasonable effort to procure such insurance. No facts are in the record to show that the defendant did not exert every appropriate effort to accomplish that result. It is expressly found that in the four months subsequent to January 10, 1928, "No company would accept the risk" of the insurance desired by the plaintiff. The attitude of the plaintiff toward the defendant after the fire in accepting the single policy procured by him, and in making no complaint, is in harmony with the idea that no positive contract to procure insurance existed between the parties, but quite inconsistent with the existence of such a contract as the auditor inferred was made.

The trial judge rightly ordered judgment in favor of the defendant. *Cass* v. *Lord*, 236 Mass. 430, 432.

*Exceptions overruled.*