WILLIAM G. RAPP, administrator, & another *vs.* LESTER L. BURDICK, INC. & another.

Suffolk.    October 8, 1957. — December 4, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Insurance,* Contract of insurance, Application, Issuance of policy. *Contract,* What constitutes. *Actionable Tort.*

An accident and health insurance policy never came into effect and a beneficiary was not entitled to recover under it where the application for the policy stated that the application was "subject to acceptance" by the insurance company and that the insurance applied for would "not be effective unless . . . [the applicant should be] regularly attending all of the usual duties of . . . [his] occupation on the countersignature date of the policy," which provided that it was "in consideration of the statements in the application," and it appeared that the applicant died the day before the policy was issued by the company and was countersigned. [441]

Mere solicitation by an insurance company's agent of purchase of a policy of accident and health insurance and his procurement of an application therefor expressly subject to acceptance by the company at its home office did not, in the absence of special circumstances, impose on the agent or the company any legal obligation to the applicant to act diligently to cause the prompt issuance of the policy. [441–443]

CONTRACT OR TORT.    Writ in the Superior Court dated December 29, 1952.

The action was heard by *Brogna,* J.

*Lester S. Cramer,* for the plaintiffs.

*Myer Z. Kolodny,* for the defendants.

WHITTEMORE, J.    This is an action in contract or tort, tried to a judge without a jury, to recover the face amount of an accident and health insurance policy.    The action is brought by the administrator de bonis non of the estate of the named insured and by the chief beneficiary named in the policy.    The defendants are the alleged insurer and its general agent in Boston.

The declaration states a count in contract against the agent for breach of an agreement to act promptly to cause

the issuance of the policy and a count in tort for negligent failure to do so. There are like counts against the company. The fifth count asserts the claim of the beneficiary under the policy.

The trial judge found for the defendants on all the counts and made findings of material facts. The case is here on the plaintiffs' exceptions to action on requested rulings and to the denial of a motion to vacate the findings and for a rehearing.

The findings of material facts may be summarized as follows: The policy was applied for by one Charles Bernstein on November 16, 1950, and issued on January 2, 1951. Bernstein died on January 1, 1951, as a result of an automobile accident (which by the death certificate, in evidence, occurred on December 30, 1950). He was one of six hundred eighty members of the Advertising Club of Boston, a group which had been solicited by the agent to purchase insurance contracts. "The agent had full authority to act for the company in the solicitation and procurement of business and writing of insurance policies for the company." The agent furnished printed application forms. No physical examination was required. "Upon receipt of applications they would be looked over by the agent, and unless further information was required . . . would be sent to the home office of the company in New Jersey for the issuance of the policy and for the policy to be sent to the agent in Boston to be countersigned." No additional information was required of the deceased. "The agent did not send the application of the deceased to the company until December 14, 1950. I am unable to find what caused this delay, but I do find that it was not due to anything which the deceased did or failed to do; nor . . . by waiting for the receipt of the required minimum of applications. I do not find that the unexplained delay constitutes negligence[1] on the part of

---

[1] This is of course not a finding of no negligence but read alone speaks rather of a failure to sustain the burden of proving negligence. *National Shawmut Bank* v. *Cumming*, 325 Mass. 457, 461. Possible uncertainty as to the purport of such a statement in findings of material facts is doubtless in the usual case resolved by the context, but is preferably to be avoided by the use of direct statements of the material findings and the decisive rulings. See, generally, *Brodeur* v. *Seymour*, 315 Mass. 527, 529–530.

the agent or of the company." The issuance of the policy on January 2, 1951, was within a reasonable time of the receipt of the application from the agent. The agent countersigned it on January 2, 1951. Payment of the premium, attempted after the death of the deceased, was refused by the company. "I do not find that the requirement of the payment of the premium was waived or that credit was extended therefor. I do not find that there were any express or implied promise[s] or representations made by the agent or the company that the policy would be issued other than what appears from the application and policy."

The president of the agent corporation testified that "Generally it was the practice that when an application was received, two weeks usually elapsed for the purpose of transmitting it to the home office in Newark, New Jersey, for their consideration." The broker who acted for the agent in the sale of policies to the Advertising Club testified that when he left the application with the deceased he "urged upon . . . Bernstein to fill out his application and get it paid for, the quicker it would be in effect so that he would have coverage in February . . . ."

In the application the deceased answered "Yes" to the following question: "Do you understand that this application is subject to acceptance by the Commercial Casualty Insurance Company, Newark, N. J., and that the insurance hereby applied for will not be effective unless you are regularly attending all of the usual duties of your occupation on the countersignature date of the policy?"

The policy provided that it is "In consideration of the statements in the application . . . and the payment of the pro rata premium of twenty-seven and 30/100 dollars . . . ."

The action on the requests for rulings shows an acceptance of the plaintiffs' theories of the law, and an intention to base the decision for the defendants on conclusions of fact. By granting requests numbered 1 through 5 the trial judge ruled as to each count that "There is sufficient evidence to warrant recovery by the plaintiffs." He also granted request numbered 35 reading, "Upon the receipt

. . . of the application . . . after active solicitation there-
for . . . [the agent] assumed a duty to the applicant to
act upon it with reasonable promptness."

In our view, for reasons hereinafter stated, a finding for
the defendant under each count was required as matter of
law. It is unnecessary therefore to resolve the asserted
inconsistencies in the findings and rulings, or to consider the
motion to vacate the findings and for rehearing.

The terms of the application and the policy, and the facts
found and not controverted in the evidence, establish that
there was no written or oral contract for insurance or tem-
porary insurance in effect at any time, and no basis for re-
covery under count 5. *Badger* v. *American Popular Life
Ins. Co.* 103 Mass. 244. *Markey* v. *Mutual Benefit Life
Ins. Co.* 118 Mass. 178, 194. *Myers* v. *Liverpool & London
& Globe Ins. Co.* 121 Mass. 338. *Dunham* v. *Morse,* 158
Mass. 132, 133. *Allen* v. *Massachusetts Mutual Accident
Association,* 167 Mass. 18, 19. *Cunningham* v. *Connecticut
Fire Ins. Co.* 200 Mass. 333. *Cauman* v. *American Credit
Indemnity Co.* 229 Mass. 278, 284. *Ansin* v. *Mutual Life
Ins. Co.* 241 Mass. 107, 110. *Gabbett* v. *Connecticut General
Life Ins. Co.* 303 Mass. 433, 435. *Earle C. Dodds Inc.* v.
*Boston Casualty Co.* 308 Mass. 124, 127. *Krause* v. *Equi-
table Life Ins. Co.* 333 Mass. 200, 203. Compare *DeCesare*
v. *Metropolitan Life Ins. Co.* 278 Mass. 401; *Parkway, Inc.*
v. *United States Fire Ins. Co.* 317 Mass. 428. This is so
even if advance payment of the premium was waived, and
we do not discuss the exceptions which relate to that issue
nor have we stated the evidence which the plaintiffs assert
required a ruling that payment of the premium had been
waived.

Turning to the alternative contentions under counts 1
through 4, we are unable to accept the view which finds sup-
port in a number, perhaps a slight majority, of the jurisdic-
tions where the issue has been decided,[1] that unreasonable

[1] Authorities are collected and discussed in 32 A. L. R. (2d) 487 (1953)
and 3 Univ. of Chicago L. Rev. 39, and see also recent cases for recovery,
*Bellak* v. *United Home Life Ins. Co.* 211 Fed. (2d) 280 (C. A. 6), *North American*

delay in acting on an application for insurance gives rise to a right in tort or, as some cases suggest, in implied contract. The principles involved have been discussed at length and there is no occasion for extended review on the facts before us. Cases in which the existence of an insurance contract could have been found as a fact (see *DeCesare* v. *Metropolitan Life Ins. Co.* 278 Mass. 401, and cases cited) or which present special circumstances of assertion, representation and reliance may of course be distinguished. Certainly the opportunity to solicit and the receipt of the application are of value to the company and the agent; the insurance business is built on these preliminaries. The fact that the solicitor as the agent of the company is working to bring about a formal insurance contract, to be effective later, does not mean that his words or acts and ensuing action or inaction of the applicant could not in some circumstances give rise to another obligation, that is, to deal promptly with the application. See *Damon* v. *Kaler*, 229 Mass. 215. Compare *Cass* v. *Lord*, 236 Mass. 430, 432 *Heaphy* v. *Kimball*, 293 Mass. 414. A soliciting agent's obligation in such circumstances would, of course, not necessarily be the obligation of the company or even of his immediate employer. See *Cass* v. *Lord*, 236 Mass. 430, 432. We find, however, no special circumstances in this case which affect the result. The conclusive demonstration that the agent's diligence would have given the deceased a valid insurance policy removes an uncertainty which has been adverted to in some cases, but it has no bearing on whether any obligation of diligence arose in the first place. The absence of a medical examination, and hence of an occasion

---

*Accident Ins. Co.* v. *Ralls*, 288 Pac. (2d) 1097 (Okla. 1955). For supporting comment see, inter alia, 75 Univ. of Pa. L. Rev. 207; 40 Yale L. J. 121; 48 Dickinson L. Rev. 51. An article in 13 B. U. L. Rev. 734 accepts the view that the decisions affirming liability are judicial legislation but asserts that they are, nevertheless, wise and justified in the common law tradition. The weakness of the stated principles to support liability is forcefully asserted by Prosser, 3 Univ. of Chicago L. Rev. 39. The author joins several judges in the view that considerations of fairness and moral obligation may call for legislative, but do not call for judicial, action. For legislation see N. D. Rev. Code Title 26, § 1901 (1943); held constitutional, *National Union Fire Ins. Co.* v. *Wanberg*, 260 U. S. 71. See for legislative direction of aspects of automobile liability insurance G. L. (Ter. Ed.) c. 175, §§ 113D–113F, 113H–113I.

to weigh the applicant's physical condition, and the waiver of advance payment of premium, if it occurred, may bear on the likelihood of undertakings or representations having been made, and relied on, but neither is a circumstance which changes the significance of the usual acts of solicitation and application. The unequivocal statement, expressly accepted by the applicant, that the application is subject to acceptance at the home office, confirmed that the agent was not purporting to create a present legal obligation. This fact is, we think, generally understood in cases where a present "binder" or equivalent is not purchased. It speaks against the reasonableness of construing the usual sales talk to contain a present undertaking to the applicant or a solicitation of reliance on the agent's diligence and promptness. Making application in such circumstances completes no contract, and establishes no relationship on which a duty from the solicitor to the applicant can be predicated. Refraining thereafter from applying for other insurance cannot enlarge the scope of what has occurred. *Swentusky* v. *Prudential Ins. Co.* 116 Conn. 526. *Zayc* v. *John Hancock Mutual Life Ins. Co.* 338 Pa. 426. *Schliep* v. *Commercial Casualty Ins. Co.* 191 Minn. 479. *Munger* v. *Equitable Life Assurance Society,* 2 Fed. Sup. 914 (D. C. Mo.). *Patten* v. *Continental Casualty Co.* 162 Ohio St. 18. *Hayes* v. *Durham Life Ins. Co.* 198 Va. 670. Prosser: Delay in Acting on an Application for Insurance, 3 Univ. of Chicago L. Rev. 39. 32 A. L. R. (2d) 487, 517–519. See *Heaphy* v. *Kimball,* 293 Mass. 414, 418; *Cass* v. *Lord,* 236 Mass. 430, 432.

The question whether the personal representative or the beneficiary should recover for failure to perform an obligation to deal promptly with an application for insurance (see 75 Univ. of Pa. L. Rev. 207, 224–225) is not presented.

*Exceptions overruled.*