RAYDEN ENGINEERING CORPORATION *vs.* FREDERICK C. CHURCH & others.

Suffolk.   November 6, 1957, May 28, 1958. — June 5, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Insurance,* Contract to obtain insurance, Agent.  *Contract,* To obtain insurance, Agent's contract.  *Agency,* Insurance agent, Agent's contract, Agent's liability to principal, Subagent.  *Negligence,* Insurance agent, In obtaining insurance policy, Contributory.  *Actionable Tort. Damages,* For tort, Nominal.  *Practice, Civil,* Variance, Amendment.

A statement by an expert insurance adviser to representatives of a corporation establishing a new business, in answer to their inquiry as to whether its key employee was "covered" on a proposed accidental death policy benefiting the corporation, that "I will take care of it, it is all set," in the circumstances that the employee had not assented to the procurement of the policy or authorized the adviser to commit him thereto, was only an undertaking of the firm of insurance brokers represented by the adviser to use reasonable efforts to obtain the policy, including reasonable effort to get the employee to apply for it, and not a binding undertaking that the policy was effective forthwith.  [658–659]

An authorized agent purporting to act for his principal in making a contract binding his principal would not be liable personally on the contract.  [659]

Evidence warranted findings that a corporation and a firm of insurance brokers established a principal-agency relationship and that the firm was negligent in failing in an undertaking to use reasonable efforts to procure for the corporation's benefit a policy of accidental death insurance on its key employee in accordance with its instructions and in failing to report that the policy had not been procured during the six weeks between the undertaking and accidental death of the employee. [660]

Evidence warranted a finding that a corporation was not lacking in due care in relying on a firm of insurance brokers, who acted as its agents in determining and in placing suitable policies for it, to carry out the firm's undertaking to use reasonable efforts to procure for the corporation's benefit a policy of accidental death insurance on its key employee, although during the six weeks between the undertaking and accidental death of the employee the corporation did not receive any policy or confirmation of the insurance. [660]

A finding of negligence toward a corporation on the part of the responsible employee of a firm of insurance brokers acting as agents for the corporation was warranted by evidence of his failure to carry out an undertaking to use reasonable efforts to procure for the corporation's benefit an insurance policy against accidental death of its key employee in accordance with its instructions and failure to report that the policy had not been procured during the six weeks between the undertaking and accidental death of the corporation's employee. [660–661]

In an action of contract by a corporation against insurance brokers based on the defendants' failure to procure for the plaintiff's benefit a policy of insurance against accidental death of its key employee, who was killed in an accident six weeks after an undertaking by the defendants with respect to such procurement, there was no error on the part of the trial judge in directing a verdict for the defendants on the ground of variance where the declaration alleged a firm undertaking by the defendants to "effect" the policy within a reasonable time but the undertaking proved was to use reasonable efforts to procure the policy. [661–662]

In an action of tort by a corporation against a firm of insurance brokers and its responsible employee based on the employee's negligence in failing to perform an undertaking to use reasonable efforts to procure for the plaintiff's benefit a policy of insurance against accidental death of the plaintiff's key employee and in failing to notify the plaintiff that the policy had not been procured during the six weeks between the undertaking and accidental death of the plaintiff's employee, the trial judge rightly directed a verdict for the defendants on the ground that the plaintiff failed to show that any such negligence resulted in substantial damage to it where the evidence left it conjectural whether an accidental death policy would have been issued to the plaintiff's employee if the defendants' employee had gotten him to apply therefor and whether, even if a suitable policy had been obtained, recovery for his death could have been had thereunder on its terms and conditions and what the amount of recovery would have been. [662–664]

In an action in which a pre-trial order provided that "pleadings are complete and there are to be no further amendments" and the trial judge rightly directed verdicts for the defendants on tort counts in the declaration because the plaintiff corporation did not show that breach of duty on the part of the defendants in negligently failing to carry out a certain undertaking resulted in substantial damage to it and on contract counts because of a variance in that a contract involving the same undertaking shown by the proof to have been made and broken by the defendants was materially different from the contract alleged in the declaration, this court denied a motion by the plaintiff to amend its declaration so as to allege the contract proved and thus cure the variance, which would have entitled it to nominal damages on the contract counts, required sustaining of its exceptions as to those counts, and afforded it under those counts a second chance to show that it sustained substantial damage. [665]

CONTRACT OR TORT. Writ in the Superior Court dated July 8, 1953.

The action was tried before *O'Connell*, J.

The case was argued at the sitting of the court in November, 1957, before *Wilkins*, C.J., *Ronan*, *Spalding*, *Counihan*, & *Whittemore*, JJ., and afterwards was submitted on briefs to all the Justices.

*Thomas J. Carens*, (*Robert J. Sherer* with him,) for the plaintiff.

*Edward C. Park*, (*Charles C. Worth* with him,) for the defendants.

WHITTEMORE, J. These are the plaintiff's exceptions to the action of the trial judge in directing verdicts for the defendants on each of the counts of the declaration. The action was in tort and contract against the members of a firm of insurance brokers in Boston, co-partners (hereinafter called the firm), and their employee, one Delamater. The contract counts, 1, 2, and 3 against the firm, and counts 4 and 5 against Delamater, alleged a failure to perform an undertaking to effect, for the plaintiff's benefit, a policy of insurance against accidental death of an employee, one Machinist. Counts 2, 3, and 5 alleged also a breach of an agreement that the coverage would be bound so as to take effect immediately. The counts in tort, count 6 against the firm and count 7 against Delamater, alleged negligence

in the performance of the undertaking to effect insurance and also negligent failure to notify the plaintiff that the insurance had not been placed, with loss of the opportunity to place the insurance elsewhere.

The evidence permitted findings of fact as stated in this and following paragraphs. In April and May, 1952, the members of the defendant firm, a general insurance agency, were, through Delamater, acting as agents of the plaintiff to assist in determination of suitable policies for the insurance needs of the plaintiff's newly established business and to place policies. By mid-May, 1952, Delamater had bound several policies for the plaintiff, and had so acted as to give evidence of authority to bind various kinds of policies other than accident policies and to take responsibility for the firm in securing, maintaining, and servicing business. He had such authority in fact. At a conference at the plaintiff's plant in Hingham in mid-May, Fountain and Barnes, two of the three men principally interested in the plaintiff, talked with Delamater about the plaintiff's insurance needs. Barnes, who was the plaintiff's president, stressed their wish to have an accident policy insuring Machinist as a "key employee" whom it would be hard to replace. Barnes rejected Delamater's suggestion of a life policy because "it would take too long before they could get it, because he understood he had to be examined and all that, and he wanted something right away quick." Delamater said "O. K., if that's what you want." Barnes said he wanted "a straight accident policy" payable to the plaintiff in the amount of $50,000; that Machinist drove back and forth to New York by automobile and "was kind of a reckless driver." He wanted the policy in case Machinist was killed going back and forth to New York. Delamater said the premium would be between $250 and $300, or $325. Fountain testified: "We wanted this accident insurance on an annual basis." Delamater asked Machinist's age (which was fifty years) and his weight. Barnes said the price was all right, to go right ahead with it, and "put it on right away" as Machinist was making another trip to New York

that week end. At some point Machinist came into the office and was introduced to Delamater who asked him no questions but shook hands with him and "talked to him pleasantly." After Machinist went out Barnes "was insistent upon it" and asked, "Now, is Mr. Machinist covered on this $50,000 policy?" Delamater answered, "I will take care of it, it is all set." Barnes said, "Are we ready now to operate with our workmen's compensation and other insurance on this plant? Are we ready to go?" Delamater answered, "You are all set, you are all covered. You are all set."

To Delamater a "straight accident" policy was one which provides accident benefits only as distinguished from accident and health. At the trial the term "straight accident" was used to describe a policy with death benefits only.

No application was signed, no premium paid, and no policy received by the plaintiff, and the plaintiff did nothing more about it after the conference.

Machinist was killed in an automobile accident on the night of June 27–28, 1952. A medical examiner's report to a coroner certified that Machinist died after losing control of his automobile and that no other person contributed to his death.

Fountain informed Delamater of Machinist's death by telephone on June 30, 1952. Fountain asked if Delamater had the accident policy. It then became known that after the May 12 conference Delamater had taken no steps to obtain the accident policy, because of the pressure of other business, and because, for some of the intervening time, he had been ill. The jury could have found that the defendants did not communicate with the plaintiff about any insurance matters between the mid-May conference and June 30.

There was no direct evidence that Machinist knew of the attempt to place the accident policy; he had, however, "made remarks around the office that he was worth more dead than alive."

There is no standard form of accident policy; there are many different terms and conditions of such policies. There

is available to brokers and agents a manual with short digests of various accident policies, some nine hundred pages in length, with a new edition each year. The American Casualty Company of Reading, Pennsylvania, with a branch office in Boston (hereinafter called "American"), offered in 1956 a six months', renewable "death and dismemberment" policy called a "tripmaster" with premium of about $150 for a $50,000 policy, which as testified to by one Foster, a general agent for American and one other company and a specialist in accident and health insurance, "boils down to that wherever you go, whatever you do, you are covered for a specified amount of time up to one hundred eighty days for anything that would happen to you." "[A]t the end of six months, it would be subject to renewal." The information required of an applicant for a tripmaster policy in 1956 was his name and address and the name of his beneficiary.

Accident insurance with American could not be bound or made final by brokers or agents but could be purchased and, in emergency, made final by telephone conversation with the accident and health underwriter of American in Boston if the broker had a completed application with all the answers in order and would agree to get the application to the underwriter as quickly as possible, "so that I wouldn't be compromising myself or the company. . . . A policy similar in its essential to the American's tripmaster providing against accidental death for a period up to one hundred eighty days was on the market available in 1952. We have never insisted upon signed applications on this business. . . . I would prefer it, but it is not required."

There was no direct evidence of the requirements in 1952 of an application for a tripmaster type policy.

Some, but few, companies write policies providing death benefits alone. Foster knew of none and "If you place an order [with Foster] for accidental death, what you would be getting would be accidental death and dismemberment."

Subject to the qualifications aforesaid in respect of the

practice and policies of American, all companies writing accident policies covering adult males, other than limited travel policies, require the submission of a signed application containing answers to a number of questions relating to the applicant's health, occupation, or medical, moral or financial record, and there is some delay while the company investigates or considers the risk. Through the defendant firm it "may take anywhere from a week to sometimes a month to issue an accident policy." If payment of the first premium accompanies the application, some companies, upon finding the applicant acceptable on the application date, make the policy effective from that date. The defendants, the firm, are agents for seven companies named in the testimony, and also two of their own companies "and . . . many others." Some of these companies write accident insurance. On accident insurance, the firm submit the application to the company for approval because underwriting, that is appraisal of the risk, is necessary on such insurance. There was no evidence to show that the defendant firm acted as agents for American.

Some additional facts are mentioned in the following paragraphs.

1. We think the conclusion was not open that Fountain and Barnes could reasonably have understood that Delamater was bindingly undertaking that an accident policy was effective forthwith. We assume that the words "it is all set" after the inquiry "Now, is Mr. Machinist covered on this $50,000 policy?" could in some circumstances be deemed the equivalent of "The requested coverage is forthwith bound." We assume also that it could have been found that the representatives of the plaintiff were entitled to rely very greatly on statements made by Delamater about insurance, a field in which he was expert and they were not, and in which he sought to be and was their adviser acting for his firm. But what was being discussed was a policy on the life of another, that is, a contract with that other person in respect of the hazards of his existence. It should have been understood, reasonably, that a contract with the

employee could not be made without his assent. See *Whiting v. Massachusetts Mutual Life Ins. Co.* 129 Mass. 240; G. L. (Ter. Ed.) c. 175, § 108, as amended. The great likelihood that the employee would assent and the possibility or probability that Delamater could arrange the necessary details with him, in a very short time, are beside the point. The nature of the contract under discussion meant that Delamater could not effectively say "The insurance is now in effect" and meant also that the plaintiff's representatives could not reasonably think he was so warranting. Delamater had no authority from Machinist to commit him. At most the undertaking was to use reasonable efforts to obtain and make effective thereafter an accident policy on Machinist's life.

2. Although such a contract was not the contract declared on, and the variance is controlling (see section 6, *post*), we think that the jury could have found that the members of the firm had made a contract to use reasonable effort to obtain the accident policy including reasonable effort to get Machinist to apply therefor. See *Heaphy* v. *Kimball*, 293 Mass. 414, 418; *Rapp* v. *Lester L. Burdick, Inc.* 336 Mass. 438, 442; and 29 A. L. R. (2d) 171, 175, for a collection of cases in other jurisdictions. Compare *Cass* v. *Lord*, 236 Mass. 430, 432; *Spillane* v. *Yarnalowicz*, 252 Mass. 168; *Earle C. Dodds Inc.* v. *Boston Casualty Co.* 308 Mass. 124, 127–128. The essentials of the plaintiff's requirements were sufficiently defined. See *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123, 131, and cases cited; *Shayeb* v. *Holland*, 321 Mass. 429, 431. Consideration was not lacking. See Restatement: Contracts, § 75 (2). Compare *Commonwealth* v. *Scituate Savings Bank*, 137 Mass. 301, 302; *Rapp* v. *Lester L. Burdick, Inc.* 336 Mass. 438, 443; Corbin, Contracts, § 208. There was, we think, evidence from which the authority or apparent authority of the negotiators to act for their respective principals could have been found.

3. Delamater, however, would not be liable in contract if the jury found that he was purporting to act for the firm with apparent authority. *Nickerson* v. *Dyer*, 105 Mass. 320. Restatement: Agency, § 320. We see no reasonable

basis on the evidence for a finding that Delamater was undertaking a personal commitment such as would sustain an action of contract against him.

4. There was a basis in the evidence for a finding that the firm failed to perform their obligations as agents. Recovery can be had in tort for failure of an agent to perform a duty to obtain an insurance policy. *Damon* v. *Kaler*, 229 Mass. 215. The "breach of duty" did not arise "wholly from a contract with the principal." Restatement: Agency, § 401. A principal-agency relationship was established which imposed on the firm a duty to proceed in accordance with instructions and to report what was not being done under those instructions. Cases such as *Tuttle* v. *George H. Gilbert Manuf. Co.* 145 Mass. 169, 175, cited by the defendants, where there was no agency relationship are not in point. See *Rapp* v. *Lester L. Burdick, Inc.* 336 Mass. 438.

We assume that the plaintiff was entitled to go to the jury on the issue of its due care. There was evidence from which the jury could have found that it was reasonable to rely on the firm to do what was promised in respect of insurance for the plaintiff. There was evidence that policies of fire, trip transit, workmen's compensation and liability insurance were bound in April or May, that no confirmation slips were sent, that some of these policies were not delivered until after June 30, 1952, and that Fountain in connection with other business of his, from as early as 1932, had from time to time turned to the firm, through Delamater, to handle his insurance and had had bound some policies and had not received confirmation slips.

5. There was evidence upon which Delamater also could have been found negligent. He was the "subagent"[1] of the plaintiff. He was "a person to whom the agent delegates,

---

[1] This term has sometimes been used in a different sense to describe one whom the agent selects to act for the principal, who after his appointment stands in no fiduciary relationship to the selecting agent and for whose acts the selecting agent is not responsible if he used due care in making the appointment. See *Barnard* v. *Coffin*, 141 Mass. 37; *H. D. Watts Co.* v. *American Bond & Mortgage Co.* 272 Mass. 84; *H. A. Gogarty, Inc.* v. *T. D. Downing Co.* 313 Mass. 759, 761; Seavey, Subagents and Subservants, 68 Harv. L. Rev. 658, 659.

as his agent, the performance of an act for the principal which the agent has been empowered to perform through his own representative." Restatement: Agency, § 5. "The inference is that the regular employees of an agent are subagents." *Ibid.*, § 5, comment b. "[T]he subagent stands in a fiduciary relation to the principal, and is subject to all the liabilities of an agent to the principal except liability dependent upon the existence of a contractual relationship between them." *Ibid.*, § 5, comment c. *Ibid.*, § 428. See Seavey, Subagents and Subservants, 68 Harv. L. Rev. 658, 666–667.

. 6. The construction of the words of Delamater, "I will take care of it, it is all set," which we believe to have been warranted on the evidence, is not available to the plaintiff on the declaration. Viewed in the aspect supporting that construction, the evidence shows a contract other than that set out.

Count 1 alleges an agreement "to effect a policy" and failure "to effect said policy." Count 2 alleges an agreement to "effect various policies" including the accident policy and failure "to effect" the accident policy. Count 3 alleges a contract to keep an agreement to carry out instructions "to effect accident insurance," and failure to carry out the instructions and agreement. We think that the only difference between these allegations and the additional allegations contained in counts 2 and 3 of an agreement to bind the policy forthwith is in respect of the time of taking effect of the policy. The averment states a firm undertaking to get the policy, with the implication of a reasonable time within which to do so. Such agreements are actionable with damages computed as under the policy which should have been written. See *Everett* v. *O'Leary,* 90 Minn. 154, 156–157, cited in *Cass* v. *Lord,* 236 Mass. 430, 432. Such an agreement is materially different, in important aspects of substance, from an agreement to use reasonable efforts to procure. Section 1, *supra. Heaphy* v. *Kimball,* 293 Mass. 414. *Arrott* v. *Walker,* 118 Pa. 249, 257, 258–259. See *Derby* v. *Blankenship,* 217 Ark. 272, 275. Defences which

might be available under the contract which was alleged, but not under a contract to use reasonable efforts, would include Delamater's lack of authority, the absence of Machinist's consent, and that the contract was void.   See *Whiting* v. *Massachusetts Mutual Life Ins. Co.* 129 Mass. 240, 242;  Couch on Insurance, 779.  In *Heaphy* v. *Kimball, supra,* the allegation was of failure to procure fire insurance on hay and the auditor found a contract to do so.   This court said (p. 418) that the strongest inference of which the relevant evidence was susceptible was that the defendant would use reasonable effort and that the evidence did not "support the conclusion that the defendant entered into a contract with the plaintiff to procure" the insurance. There was no error in allowing the motion for a directed verdict under the contract counts.   See *Park & Pollard Co.* v. *Agricultural Ins. Co.* 238 Mass. 187, 194–195; *Shattuck* v. *Lawson,* 10 Gray, 405, 408; *Sheafe* v. *Locke,* 1 Allen, 369, 370; *Pope & Cottle Co.* v. *Wheelwright,* 240 Mass. 221, 224; *Brasslavsky* v. *Boston Elevated Ry.* 250 Mass. 403; *Pacheco* v. *Medeiros,* 292 Mass. 416, 423; *Spritz* v. *Brockton Savings Bank,* 305 Mass. 170, 171; *Ferris* v. *Boston & Maine Railroad,* 291 Mass. 529, 533; *Manning* v. *Loew,* 313 Mass. 252, 254.   Compare *Sandler* v. *Elliott,* 335 Mass. 576, 582–584.

7.   As we have noted the allegations in the tort counts include negligent failure to notify, and we assume that the inclusion in those counts of the averment of the undertaking to "effect a policy" would not establish a variance.   But in the view of the majority of the court, for reasons stated in this section, although not in the view of a minority including the writer of this opinion, the direction of verdicts under the counts in tort was right because of failure of the plaintiff to show that any negligence of the defendants resulted in substantial damage to the plaintiff.[1]

---

[1] The direction of verdicts under the contract counts cannot be sustained on this ground because of the plaintiff's right to nominal damages.   *Clark-Rice Corp.* v. *Waltham Bleachery & Dye Works,* 267 Mass. 402, 416.   *Nathan* v. *Tremont Storage Warehouse, Inc.* 328 Mass. 168, 171.   For the different rule in actions for negligence see *A. DaPrato Co.* v. *Boston,* 334 Mass. 186, 189. Compare *Reddington* v. *Clayman,* 334 Mass. 244, 247; *Wood* v. *Cummings,* 197 Mass. 80, 85 (assault).

It is assumed that the duty of the defendants in the circumstances required them to make diligent search for a suitable policy. Fountain, Barnes and Delamater, however, must all have understood and anticipated that the defendants would try to place the risk with one of the insurers for which the firm acted. There is no reasonable basis for concluding that Delamater had undertaken to get a policy of accident insurance for which Machinist would not have to make any application whatever. The reasonable conclusion was, therefore, that if the defendants had performed their duty and Machinist had coöperated, an application would have been made by Machinist for a one year policy with answers given to questions of the kind shown on exhibits in the case such as, for example, "Have you ever been told by a doctor that you have organic disorders, high or low blood pressure, hernia, goitre, tuberculosis, nervous condition, insanity, diabetes, syphilis or venereal disease? State nature of condition, length of treatment (if any) and date of last treatment (if any)." "Has any application . . . by you for life, accident or sickness insurance been declined or postponed or has any policy . . . been modified, cancelled or refused for renewal or reinstatement? State name of company and date and nature of action."

It is purely speculative whether a policy would have issued on such an application. There is no such universal good health that it can be presumed that Machinist would have been accepted. The probability, if it exists, that most applicants are accepted for certain types of accident policies is not enough. That Machinist was "kind of a reckless driver" brought forward somewhat the possibility of an adverse insurance policy record.

The undertaking doubtless included not only using diligence to get Machinist to sign and complete such an application and to obtain the very prompt attention of the insurer to the application, but also finding another or other policies if an application, or successive applications, were rejected. The reasonably to be anticipated performance of the defendants' undertaking would not, however, have

brought the firm to American's six months', renewable, policy in any event, if at all, until one or more applications to insurers for which the firm acted had been rejected. There is no reasonable basis for concluding that such a policy would have been obtainable. It is not established that questions did not have to be answered in 1952 to obtain the 1952 equivalent of the 1956 tripmaster policy. If other policies had been rejected it could have been on such a ground that the firm would reasonably have felt obliged to disclose the ground to American whatever the form of the application.

The defendants contend that the six months', renewable, policy could not have been found to meet the specifications and that Machinist's coöperation was conjectural. The court thinks otherwise and that the jury could have found that such mention as there was at the May conference of a year's contract was as a guide to Delamater in quoting premiums or exercising his discretion in getting a policy rather than a required term, and also could have found that it was reasonably likely that Machinist would sign an application.

There is also insufficient evidence that recovery could have been had on a tripmaster type policy for the death of Machinist. Even if the general description of the policy is to be deemed enough to fix its principal terms, that description does not exclude limiting terms and conditions in the actual policy. It is common knowledge that proof of recovery under an insurance policy requires careful attention to compliance with applicable policy provisions. Further, it is not established beyond the point of conjecture whether $50,000 or some lesser sum would have been payable for the particular accident under that policy. This is of course not an action on an insurance policy, and the rule, as to damages, is of reasonable certainty only (see *Eastern Paper & Box Co. Inc.* v. *Herz Manuf. Corp.* 323 Mass. 138, 145), but there are uncertainties here which are basic and controlling.

It is true that the failure in the duty of the agents to

inform the plaintiff that an accident policy was not being sought left it without the benefit of a search by someone else, and an application by Machinist, for the issuance of such a policy as the American tripmaster.   But the uncertainty as to whether in 1952 an application would have been required for such a policy, and as to the terms and conditions and applicability of such a policy to the particular death, would remain.

8. The plaintiff has filed a motion to amend its declaration so as to aver an undertaking to use best efforts to procure a policy.   See cases collected in *Sandler* v. *Elliott,* 335 Mass. 576, 589.   We think the motion should not be allowed. The conclusion that the plaintiff has failed to show any substantial damage would require the overruling of the exceptions under the contract counts, just as under the tort counts, except for the right of the plaintiff to recover nominal damages in contract.   A pre-trial order provided that "[p]leadings are complete and there are to be no further amendments."   The plaintiff adduced evidence of what might have been found by way of a policy to meet the plaintiff's terms, if a search had been made.   There was reason for doing this under the tort counts, regardless of the narrower averment of the contract counts, and, had damage been shown, the plaintiff would have been entitled to go to the jury in this action under the tort counts.   We do not think the plaintiff should have a second chance to show that it sustained more than nominal damage.

*Exceptions overruled.*
*Motion to amend denied.*