MARION McCUE & another *vs.* THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA.

Suffolk.   October 7, 1976. — December 31, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Insurance,* Agent, Application.  *Agency,* Insurance agent.  *Practice,
Civil,* General verdict, Interrogatories to jury.  *Verdict,* General
verdict, Interrogatories to jury.

Evidence that a husband and wife had enjoyed a continuing relation-
ship with an insurance company over a period of twenty-eight years
and that they relied on representations made by an agent of the
company in applying for health insurance was sufficient in the cir-
cumstances to warrant a jury finding that the company was liable
to the plaintiffs for losses sustained by the company's failure to pro-
cess their application for health insurance coverage. [661-663]
A motion for judgment under Rules 49 (b) and 58 (a) of the Massa-
chusetts Rules of Civil Procedure which was not filed prior to dis-
missal of the jury was properly denied as untimely. [663-664]
In the circumstances, there was no fatal inconsistency between a jury's
special answers and its general verdict. [664-666]

CONTRACT AND TORT. Writ in the Superior Court dated
May 17, 1974.

The action was tried before *Ponte,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Douglas G. Moxham* for the defendant.
*David Rapaport* for the plaintiffs.

REARDON, J.   The plaintiffs, Marion McCue and Paul
J. McCue, husband and wife, brought this action against
the defendant company (Prudential) and one Shaw to
recover under a Prudential policy known as the Coordi-
nated Health Insurance Plan (CHIP). The declaration
was in three counts, the first alleging that Prudential had

insured the plaintiffs under its CHIP policy; the second that the defendants had violated their agreement to employ reasonable efforts to complete the application for the CHIP policy; and the third that the defendants had not abided by their duty to complete the plaintiffs' application with reasonable care. On stipulation of the parties the complaint was dismissed as to the defendant Shaw at the close of the evidence. Prudential's motion for a directed verdict on count 1 was allowed, and denied on counts 2 and 3. A jury returned verdicts for the plaintiffs on counts 2 and 3 after answering seventeen special questions submitted to them over the plaintiffs' objection. Following trial Prudential moved for judgment pursuant to Mass. R. Civ. P. 49 (b) and 58 (a), 365 Mass. 812 and 826 (1974), and for judgment notwithstanding the verdicts. These motions were denied by the trial judge and Prudential subsequently appealed from the entry of judgment on the jury verdicts. There was a cross-appeal by the plaintiffs from the refusal of the judge to submit count 1 to the jury. In view of our disposition of the case we do not discuss the cross-appeal.

The plaintiffs had held various Prudential policies for twenty-eight years prior to the occurrences which gave rise to this action. In 1972, after some consideration, they decided to obtain additional health insurance coverage and to cancel a limited policy with Prudential, procuring insurance with Blue Cross-Blue Shield. Shaw, the agent of Prudential, heard of this decision, met with the plaintiffs on March 20, 1973, and convinced them to sign up under Prudential's comparable CHIP plan. The plaintiffs ceased pursuing their interest in Blue Cross-Blue Shield coverage as of that meeting. With Shaw's assistance the plaintiffs prepared and signed a CHIP application. They then paid the first month's premium on the new policy, giving Shaw their old health policy. Shaw explained that a statement from the plaintiffs' family doctor was required but that a physical examination was not. Thereafter Prudential undertook to obtain a statement from the plaintiffs' family physician who did not respond. Prudential has an internal

rule by which an application not completed within forty-five days is rejected. Shaw did not know of this rule and, hence, did not inform the plaintiffs about it. The plaintiffs' application was thereafter rejected on May 8, 1973, by virtue of the failure of the doctor to respond. As late as May 7, 1973, Shaw had advised the plaintiffs that he expected the policy to take effect on May 14, 1973. The rejection letter from Prudential was mailed to Shaw and Paul McCue on May 20, 1973, and the jury found that the plaintiffs received it. The jury also found that no notification of the rejection was given to the plaintiffs by the agent Shaw. Thereafter a medical report was sent to Prudential and was received on June 12, 1973. On June 13 Prudential instructed Shaw to procure a new application for the contemplated insurance which was to be written at a higher premium based on the medical reports. On June 23, 1973, the plaintiffs went on vacation, Mrs. McCue became ill, and was diagnosed on July 10, 1973, as suffering from acute myelocytic leukemia. The plaintiff Paul McCue informed Shaw of this diagnosis. In late August the plaintiffs were advised that the insurance coverage was refused, and on September 7, 1973, their check tendered for the premium was returned.

1. We first consider whether Prudential may, as matter of law, be liable for the plaintiffs' losses. The evidence would permit a finding that Shaw had reported to the plaintiffs that he expected their policy to issue by a certain date but failed to advise them that their application would be rejected if a medical report were not received within forty-five days, and further failed to apprise them of the status of that application. In *Rapp* v. *Lester L. Burdick, Inc.*, 336 Mass. 438, 442 (1957), it was indicated that "special circumstances of assertion, representation and reliance" might provide a basis for liability in certain cases of this type. Whether the circumstances which create such liability exist is a jury question. In our view a jury could have properly found them to be present in this case. A continuing relationship had existed between the plaintiffs and Prudential over a period of twenty-eight years, during

which Prudential agents made monthly visits to the plaintiffs to attend to their insurance needs. At the time when Shaw commenced to sell them the CHIP coverage, the plaintiffs held seven different policies with Prudential. A jury could have found that there was a climate in which reliance by the plaintiffs on Shaw's assertions and representations was particularly justified. We have noted previously that the existence of a principal-agent relationship between an applicant and an insurance adviser may provide the special circumstances required for recovery. *Rayden Eng'r Corp.* v. *Church,* 337 Mass. 652, 660 (1958). While the McCues' claims are not so strong as those in the *Rayden* case, they are considerably stronger than those in the *Rapp* case, which involved a mass solicitation of 680 club members who had not previously dealt with the company. "In this highly competitive business ... with the complexity of the varied types of insurance existing today, it has been recognized that applicants frequently do in fact rely upon a company's representatives. The courts have been unwilling to permit the companies to assert as a defence the inadequate or improper performance of these representatives." *Sullivan* v. *John Hancock Mut. Life Ins. Co.,* 342 Mass. 649, 654 (1961). In view of the nature and duration of the McCues' relationship with Prudential, a jury could easily have found that the plaintiffs justifiably relied on Prudential and its agents to process their application in a reasonable manner.

There was evidence that Prudential sent a physician's statement form directly to the McCues' family doctor, and that Shaw told Mrs. McCue that he personally would contact the doctor to expedite submission of the report. Indeed, the Notice Concerning Insurance Applications which the plaintiffs received when they requested CHIP coverage stated in part: "We will do everything possible to expedite the processing of the application."[1] The plaintiffs were

---

[1] The McCues retained this document in their possession. Despite the absence of direct testimony, the jury might have inferred that the notice was read by the plaintiffs.

never told of Prudential's "45-day rule." Had they been so advised they might well have chosen to contact the doctor themselves rather than rely on Shaw. There was also evidence that Shaw did not properly handle the application procedure. He ignored the explicit instructions of Prudential by failing to contact the McCues promptly to provide them with an appropriate explanation of the rejection and an immediate refund of the advance premium. He also failed to visit the McCues in May or June to obtain a new application, as instructed by Prudential's letter of May 20.

In all, we feel that the evidence as viewed most favorably to the McCues supports a finding of special circumstances warranting recovery under the *Rapp* doctrine. Prudential's motions for directed verdicts and for judgment notwithstanding the verdicts were correctly denied.

2. We also hold that Prudential's motion for judgment under Mass. R. Civ. P. 49 (b) and 58 (a), 365 Mass. 812 and 826 (1974), was properly denied, for it was not filed in a timely manner. Rule 49 (b) provides in relevant part: "When the [special] answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial." The rule clearly contemplates a motion prior to dismissal of the jury, for its envisages that the judge may order reconsideration of the answers and the verdict. Cases construing the identical language of the Federal rule have required that objections be raised before the jury have been discharged. *Ludwig* v. *Marion Laboratories, Inc.*, 465 F.2d 114, 118 (8th Cir. 1972). *Tennessee Consol. Coal Co.* v. *United Mine Workers*, 416 F.2d 1192, 1200-1201 (6th Cir. 1969), cert. denied, 397 U.S. 964 (1970). *Cundiff* v. *Washburn*, 393 F.2d 505, 506-507 (7th Cir. 1968). *Kirkendoll* v. *Neustrom*, 379 F.2d 694, 698-699 (10th Cir. 1967). *Employers Cas. Co.* v. *Dupaquier*, 338 F.2d 336 (5th Cir.

1964).[2] Any other approach would undesirably "encourage the use of special interrogatories as a trial tactic." *Cundiff* v. *Washburn, supra* at 507. We find this result particularly compelled where, as here, the special questions were filed at the instance of the party who now challenges the consistency of the answers with the general verdict.

3. Although we rule that Prudential is foreclosed by its failure to make a timely motion under Rule 49 (b), we have examined the alleged inconsistency between certain of the special answers and the general verdict. In so doing we have been guided by the general principle that "every reasonable intendment in favor of the general verdict should be indulged in an effort to harmonize" that verdict with the jury's answers to the special questions. *Mayer* v. *Petzelt,* 311 F.2d 601, 603 n.10 (7th Cir. 1962), quoting from *Theurer* v. *Holland Furnace Co.,* 124 F.2d 494, 498 (10th Cir. 1941). The Supreme Court of the United States has clearly indicated that this harmonization approach rests fundamentally on constitutional principles: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment." *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.,* 369 U.S. 355, 364 (1962).

While the *Atlantic & Gulf Stevedores* case dealt with inconsistencies among the special answers themselves, other courts have not hesitated to apply the principle in cases where one or more special answers allegedly conflict with the general verdict. See, e.g., *Tennessee Consol. Coal*

---

[2] We are not persuaded by the defendant's citation of *Wayne* v. *New York Life Ins. Co.,* 132 F.2d 28 (8th Cir. 1943). That case provides only that an appellate court may act "to prevent a manifest miscarriage of justice" where the inconsistency "involved merely matters of calculation and no question of fact." *Id.* at 37. It is clear from a subsequent Eighth Circuit case, *Ludwig* v. *Marion Laboratories, Inc., supra,* that the rule of the *Wayne* case is applicable only in the special circumstances described therein.

*Co.* v. *United Mine Workers, supra* at 1200; *Kirkendoll* v. *Neustrom, supra.*

Our comparison of the special answers and the the general verdict in light of this rule of harmonization has convinced us that there is no fatal inconsistency between the two. Prudential argues that the special answers show that the jury found none of the "special circumstances of assertion, representation and reliance" required for recovery under the *Rapp* case, *supra.* While the jury did give a negative answer to special question No. 9,[3] it gave an affirmative answer to No. 16[4] and set forth its reasons in response to No. 17.[5] The period of time encompassed by No. 9 is somewhat ambiguous but the answers given to Nos. 16 and 17 suggest that the jury took question No. 9 to refer only to the events between the time the McCues' application was received by Prudential's Boston office until it was ultimately rejected. The jury clearly found that Shaw had failed to carry out his duties "in a reasonable and efficient manner." This conclusion is further illustrated by the jury's answers to question No. 12: "Agent did not expedite medical statement. Agent on receipt of his copy of rejection letter failed to contact McCues. Agent failed to refund premium promptly. Failure to offer to issue a new application immediately after receiving doctor's report June 12, 1973, and before June 23, 1973, when McCues went on vacation. Agent's action or lack of same not consistent with Prudential policy."

Finally, in view of the extensive use of Rule 49 (b)

---

[3] "While the Plaintiffs' application for the CHIP policy was being processed by Prudential, were there then any special circumstances of assertion, representation and reliance relative to the CHIP policy?" Answer: "No."

[4] "Were there, at any time, any special circumstances of assertion, representation and reliance relative to the CHIP policy?" Answer: "Yes."

[5] "If your answer to that question is 'Yes,' then state what facts you find that constitute the special circumstances of assertion, representation and reliance." Answer: "Plaintiffs' reliance on agent to carry out duties pertaining to CHIP policy as a representative of Prudential and in a reasonable and efficient manner."

interrogatories in this case, we would like to sound a note of caution on their role in the trial process. It is not the purpose of that rule to promote the catechism of juries. Although there has been some debate on the advantages of special verdicts and interrogatories, there is a middle ground which holds that the utility of these procedures depends on the nature of the particular case before the jury. Speaking of the Rule 49 (a) special verdicts, the late Judge Charles E. Clark, draftsman of the Federal Rules of Civil Procedure, observed that "this often-desirable practice should be resorted to with discrimination and foresight; it should never be used for mere cross-examination of the jury to create error for the record. Its purpose and best achievement is to enable errors already potential because of confusions of fact or law 'to be localized so that the sound portions of the verdict may be saved.' . . . It is hence best available, when, as the judge can foresee, the issues can be thus clearly and simply differentiated, to save on appeal at least that portion which cannot be questioned; it is of more doubtful value in a relatively simple factual situation such as this where the details asked for may not be the whole story." *Morris* v. *Pennsylvania R.R.*, 187 F.2d 837, 841 (2d Cir. 1951). In our opinion, the theory of the use of special verdicts embraced in the foregoing quotation applies with equal force to the use of special interrogatories.

*Judgment affirmed.*